UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:25-cv-61823

ASHLEE FOY, HEATHER GESSLING,
PENNY GREEN, TIFFANY PAROTTO, and
JENNIFER VANDEWATER,

   Plaintiffs,

vs.

TWC 2022, INC. and
INTERNATIONAL HEALTH BRANDS, LLC,

   Defendant.

_____/

## AMENDED COMPLAINT

   Plaintiffs, ASHLEE FOY, HEATHER GESSLING, PENNY GREEN, TIFFANY PAROTTO, and JENNIFER VANDEWATER (hereinafter, "FOY", "GESSLING", "GREEN", "PAROTTO", "VANDEWATER" and collectively, "Plaintiffs"), by and through their undersigned attorney, hereby file this Amended Complaint against Defendants, TWC 2022, INC. and INTERNATIONAL HEALTH BRANDS, LLC (hereinafter, "TWC", "IHB" and collectively "Defendants"). In support of their complaint, Plaintiffs state the following:

## JURISDICTION AND VENUE

1. This is an action for damages and other relief based on unlawful employment practices committed by Defendant and jurisdiction of this Court is invoked pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 706(f) (42 U.S.C. § 2000e-5(f)), which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C. §§ 2000e, *et seq.*

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331, 1343.

3. The claims asserted in this Complaint arose in the Southern District of Florida during the course of Plaintiffs' employment with Defendants.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all the actions which give rise to the foregoing causes of action occurred in Broward, Florida.

## PARTIES

5. Plaintiff FOY is a resident of Palm Beach County, Florida, over the age of eighteen years and otherwise *sui juris.*

6. Plaintiff GESSLING is a resident of Columbia, Missouri, over the age of eighteen years and otherwise *sui juris.*

7. Plaintiff GREEN is a resident of Broward County, Florida, over the age of eighteen years and otherwise *sui juris*

8. Plaintiff PAROTTO is a resident of Pinellas County, Florida, over the age of eighteen years and otherwise *sui juris*

9. Plaintiff VANDEWATER is a resident of Cambridge, New York, over the age of eighteen years and otherwise *sui juris*

10. Plaintiffs are females and are members of a class protected under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act because the terms, conditions, and privileges of their employment were altered because of their sex, female.

11. Defendant TWC is a foreign corporation organized in Delaware and registered to do business within Florida. TWC has its principal place of business in St. Petersburg, Florida. Defendant TWC has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

12. Defendant IHB is a foreign limited liability company organized in Delaware and is registered to do business within Florida. IHB has its principal place of business in Coral Springs, Florida. Defendant IHB has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

13. Defendant TWC was Plaintiffs GESSLING and VANDEWATER's employer under Title VII and the FCRA.

14. Defendant TWC and IHB were a joint employer of Plaintiffs FOY, GREEN, and PAROTTO under Title VII and the FCRA.

15. Specifically, resources and personnel were being utilized interchangeably between TWC and IHB. TWC and IHB were both owned by Foster Coulson. Plaintiffs FOY, GREEN, and PAROTTO, along with other employees, were required to perform services for both entities' benefit:

    a. Plaintiff FOY was initially employed by IHB as Vice President of Operations and Brands. In addition to working for the benefit of IHB, FOY also spent the majority of her time working for TWC.

    b. Plaintiff GREEN was initially employed by IHB as Director of Operations. However, GREEN's duties were split between IHB and TWC, with almost 80% of her time spent working for TWC.

    c. Plaintiff PAROTTO was initially employed by IHB as Chief Marketing Officer. Similarly, PAROTTO spent half of her time working for IHB and the other half for TWC.

16. Defendants, through their owners/managers, had equal and absolute control over the schedules, terms, and employment conditions of Plaintiffs FOY, GREEN, PAROTTO, and other similarly situated employees. Defendants also had equal power to hire and fire employees from either entity and had an arrangement to share employees among them. Plaintiffs FOY, GREEN, and PAROTTO were required to perform services for both IHB and TWC.

17. Therefore, because TWC and IHB equally hired and fired employees, supervised and controlled Plaintiffs FOY, GREEN, and PAROTTO's work schedules, maintained employment records of Plaintiffs FOY, GREEN, PAROTTO, and other similarly situated individuals, and because the work performed by Plaintiffs FOY, GREEN, PAROTTO, and other similarly situated employees benefited both Defendants and directly or indirectly furthered their joint interest, TWC and IHB are joint employers under Title VII and the FCRA.

18. TWC and IHB have, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. §760.02(7)).

19. Plaintiffs have exhausted their administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

20. FOY filed her charges on or about November 13, 2023, and May 30, 2024, which were no more than 300 days after the last discriminatory event occurred.

21. GESSLING filed her charge on or about September 11, 2023, which was no more than 300 days after the last discriminatory event occurred.

22. GREEN filed her charge on or about November 1, 2024, which was no more than 300 days after the last discriminatory event occurred

23. PAROTTO filed her charge on or about April 3, 2024, which was no more than 300 days after the last discriminatory event occurred

24. VANDEWATER filed her charges on or about November 9, 2023, and March 21, 2024, which were no more than 300 days after the last discriminatory event occurred

25. FOY was issued Notice of Right to Sue Letters on July 2, 2025, and August 8, 2025. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as composite Exhibit 1).

26. GESSLING was issued a Notice of Right to Sue Letter on July 2, 2025. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as composite Exhibit 1).

27. GREEN was issued a Notice of Right to Sue Letter on July 2, 2025. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as composite Exhibit 1).

28. PAROTTO was issued a Notice of Right to Sue Letter on July 2, 2025. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as composite Exhibit 1).

29. VANDEWATER was issued Notice of Right to Sue Letters on July 8, 2025, and August 8, 2025. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as composite Exhibit 1).

## GENERAL ALLEGATIONS

**Ashlee Foy**

30. FOY was hired as an employee at IHB from on or about July 5, 2022, until her termination on or about October 20, 2023.

31. FOY initially applied for the position of Vice President of Operations with IHB.

32. However, at the end of the interviewing process, IHB informed her that it could only meet her salary expectation if she took on the additional role of Vice President of Brands. FOY agreed.

33. As the Vice President of Operations and Brands, FOY essentially took on two roles for one salary.

34. Additionally, Peter Gillooly, who was also participating in the same interviewing process for the same position as FOY, was selected to be the COO of TWC with a significantly higher salary despite having less than 2 years of experience at the time. FOY, on the other hand, had more than 30 years of experience in the industry when she applied.

35. Male executives who were hired after her received a higher salary and were not required to take on an additional role.

36. Gillooly, as the COO of TWC, often spoke about FOY in a negative light in group meetings and would use derogatory remarks when referring to her.

37. When FOY addressed the issue with her supervisor, Richard Ford, and the VP of HR, Natasha J., she was assured that the problem would be looked into. However, Natasha later informed FOY that she was instructed not to continue with this issue and to "shut it down" from the higher-ups.

38. Approximately two weeks later, Gillooly was promoted to CEO of TWC.

39. When the position of CEO for IHB was vacant, Foster Coulson – the owner of both TWC and IHB – flatly refused to consider FOY for the position despite her experience and instead promoted Brandon Keumper, who was a freshly graduated college student and male.

40. Keumper, as the new CEO, was inexperienced in every aspect and had to rely on Plaintiff FOY to perform his job.

41. Not only was FOY required to perform two roles for one salary, but she was now required to perform the CEO's duties for him as well. Keumper, by virtue of being male, enjoyed a higher ranking and a higher-paying position than FOY despite being grossly underqualified.

42. Had Plaintiff FOY been male, she would not need to do double to triple the work for a single salary. Had Plaintiff FOY been male, she would have been promoted to the CEO position.

43. FOY was then subsequently promoted to COO, but her salary remained the same, and she was required to take on additional duties along with her existing ones.

44. Additionally, the IHB work group chat that FOY and co-Plaintiff GREEN belonged to had Aunt Jemima depicted as the group's icon. Aunt Jemima is based on the enslaved black "mammy" archetype, which featured a plump black woman wearing a headscarf who is a devoted and submissive servant.

45. It should be noted that FOY and GREEN were the only females in the group chat, and it was Foster Coulson who handpicked the group's icon. Every other team group chat had a professional brand icon, in contrast to the group chat that FOY and GREEN were members.

46. On or about October 20, 2023, FOY was terminated for allegedly using a formula that belonged to IHB without permission.

47. The reason for FOY's termination was pretextual in that the alleged formula that belonged to IHB was never confirmed or investigated.

48. FOY's sex was, at a minimum, a motivating factor in Defendants' decision to terminate FOY.

49. Additionally, FOY filed her initial charge of discrimination with the EEOC on November 13, 2023, and Defendants, in retaliation, filed a meritless lawsuit against her on May 29, 2024.

**Heather Gessling:**

50. GESSLING was one of the Foundation Members of TWC and worked as Chief Medical Officer of the Medical Board from May 5, 2022, until August 28, 2023. GESSLING was also the only female on the Board.

51. As Chief Medical Officer, GESSLING was to manage the pharmacy and physicians, compliance, and formulate supplements.

52. During GESSLING's employment with TWC, GESSLING constantly experienced discrimination based on her sex.

53. Specifically, even though GESSLING's input as a Chief Medical Officer was essential to the formulation of supplements, the implementation, and distribution of such supplements and medical kits, she was not invited to numerous relevant meetings. In those meetings that she was invited to, her input was ignored. However, if it were a male who made the same input, it was taken seriously.

54. Foster Coulson and Peter Gillooly constantly talked down on GESSLING and other female employees.

55. Peter Gillooly would tell GESSLING that he "don't need any women's intuition", and suggested that GESSLING and co-Plaintiff VANDEWATER wear skin-revealing bikinis to promote TWC and to post on Instagram.

56. On August 28, 2023, GESSLING was abruptly terminated for allegedly starting a rumor on Gillooly's involvement with another female employee. Right before Peter Gillooly terminated GESSLING, Gillooly told GESSLING that he believed GESSLING was intimidated by the female employee's appearance, and GESSLING's action was fueled by her vanity.

57. The reason for GESSLING's termination was pretextual in that the alleged rumor and its instigator were never confirmed or investigated.

58. GESSLING's sex was, at a minimum, a motivating factor in Defendants' decision to terminate her.

59. Furthermore, when GESSLING, via her counsel, indicated her intention of filing a charge of discrimination with the EEOC on September 11, 2023, Defendant, in retaliation, immediately filed a lawsuit against GESSLING just eight days later, on September 18, 2023.

**Penny Green:**

60. GREEN worked for IHB as Director of Operations from on or about September 2022 until October 17, 2023.

61. GREEN was in charge of logistics, shipping, inventory, and managing customer service representatives for both TWC and IHB.

62. Peter Gillooly, the CEO of TWC, would direct GREEN on how to perform her work, even though co-Plaintiff FOY was GREEN's supervisor.

63. Even though GREEN was the Director of Operations, she was instructed to carry out duties that were degrading and not appropriate for one in her position. For example, GREEN was instructed to clean out former male employees' offices even though it was not a part of her duties.

64. When GREEN and other female employees voiced their opinions and/or asked questions, they were ignored. However, when a male did the same, they were acknowledged.

65. GREEN spoke with Peter Gillooly and Brandon Keumper about the different treatment of male and female employees, but nothing was resolved.

66. Additionally, the IHB work group chat that GREEN and co-Plaintiff FOY belonged to had Aunt Jemima depicted as the group's icon. Aunt Jemima is based on the enslaved black "mammy" archetype, which featured a plump black woman wearing a headscarf who is a devoted and submissive servant.

67. It should be noted that FOY and GREEN were the only females in the group chat, and it was Foster Coulson who handpicked the group's icon. Every other team group chat had a professional brand icon, in contrast to the group chat that FOY and GREEN were members

68. On October 17, 2023, GREEN was terminated for allegedly helping FOY create a competing brand with IHB by liking that brand's Instagram page.

69. The reason for GREEN's termination was pretextual in that the alleged incident was never investigated or confirmed.

70. GREEN's sex was, at a minimum, a motivating factor in Defendants' decision to terminate GREEN.

**Tiffany Parotto:**

71. PAROTTO worked for IHB as Chief Marketing Officer from on or about July 2023 until October 16, 2023.

72. During her employment with Defendants, PAROTTO was introduced to Tyrone Parker, a partner of IHB from another company.

73. Almost immediately after the introduction, Tyrone began to engage PAROTTO in sexually explicit conversation. Tyrone also sent PAROTTO photos of his genitals and requested her to do the same.

74. PAROTTO reported the incident to Foster Coulson, who informed her that he would look into the incident and instructed her "not to talk about it ever again".

75. Despite the promise to look into the incident, Foster Coulson repeatedly praised Tyrone, and nothing was done regarding the incident.

76. After PAROTTO reported the incident, the Defendants' attitude toward her changed.

77. Specifically, PAROTTO was required to work additional hours even though it was not needed. Even though she was on her time off, Defendants relentlessly contacted her for work. PAROTTO would also get snapped at when she tried to voice her opinion with Foster Coulson.

78. Defendants were constantly pressuring PAROTTO to work more hours, being ignored, and being diminished, coupled with Defendants' dismissive attitude toward PAROTTO's experience in sexual harassment, PAROTTO was forced to resign in order to protect her well-being.

79. PAROTTO's sex was, at a minimum, a motivating factor in Defendants' behavior in forcing PAROTTO to resign.

**Jennifer VanDeWater:**

80. VANDEWATER worked for TWC from on or about May 2022 until August 31, 2023.

81. VANDEWATER initially worked as Vice President of Pharmacy and was later promoted to Chief of Pharmacy. Despite the promotion, VANDEWATER received no increase in pay but was required to take on additional duties associated with the title.

82. As part of her additional duties, VANDEWATER was to appear on more shows and podcasts to promote TWC, attend more meetings and conferences, manage and run the wholesale department, and assist on projects assigned by Peter Gillooly.

83. Peter Gillooly, the CEO of TWC, would suggest that VANDEWATER and co-Plaintiff GESSLING wear revealing bikinis to promote TWC and post pictures on Instagram.

84. Gillooly would often video call VANDEWATER while he was working out and deliberately angled the camera so that it would focus on his crotch.

85. Gillooly also made suggestive remarks about her body.

86. When Gillooly and VANDEWATER were on business trips for the company, Gillooly would try to get her to go drinking alone with him and send VANDEWATER text messages stating that he looked forward to stay together alone with VANDEWATER.

87. Aside from sexually harassing her, Gillooly also looked down on VANDEWATER because she was a woman.

88. Specifically, Gillooly commented that he could "go to Jamaica and pay $10 grand to have the same degree" as VANDEWATER.

89. VANDEWATER's opinion and input were ignored. The same could be said for other female employees as well, while a male doctor who was voicing the same opinion as hers would be taken seriously.

90. Male doctors also enjoyed a higher salary and a higher title than VANDEWATER, despite being less experienced than her and not performing half of her duties.

91. VANDEWATER was terminated on August 31, 2023, without any explanation.

92. VANDEWATER's sex was, at a minimum, a motivating factor in Defendants' decision to terminate her.

93. Additionally, VANDEWATER filed her charge of discrimination with the EEOC on November 9, 2023, Defendants, in retaliation, amended the lawsuit involving co-Plaintiff GESSLING to include VANDEWATER on February 8, 2024.

94. Plaintiffs have retained the undersigned firm to prosecute this action on their behalf and have agreed to pay it a reasonable fee for its services.

95. Plaintiffs are entitled to their reasonable attorneys' fees and costs if they are prevailing parties in this action.

## COUNT I:
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (DISCRIMINATION BASED ON SEX as to FOY)

96. Plaintiff FOY re-avers and re-states paragraphs 1–49; 94-95 above, as though the same were fully re-written herein, and says:

97. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000-e, for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

98. Plaintiff FOY is a member of a protected class, to wit, female.

99. Plaintiff was, at all relevant times, qualified for her position of Vice President of Operations and Brands and subsequent position of COO in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

100. Defendants acted with intentional disregard for Plaintiff FOY's rights as a woman and a person protected under Title VII.

101. Defendants did not have a legitimate, non-discriminatory reason for eliminating FOY's position.

102. However, even if Defendants had a legitimate, non-discriminatory reason, FOY's sex was, at a minimum, a motivating factor in that decision.[1]

103. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII.

104. Plaintiff FOY, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under Title VII. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff FOY is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff ASHLEE FOY requests that:

    a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including

---

[1] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

injury to her professional reputation, and emotional pain and suffering caused by Defendants' discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT II:
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (DISCRIMINATION BASED ON SEX as to GESSLING)

105. Plaintiff GESSLING re-avers and re-states paragraphs 1–29; 50-59; 94-95 above, as though the same were fully re-written herein, and says:

106. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000-e, for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

107. Plaintiff GESSLING is a member of a protected class, to wit, female.

108. Plaintiff GESSLING was, at all relevant times, qualified for her position of Chief Medical Officer of the Medical Board in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

109. Defendants acted with intentional disregard for Plaintiff GESSLING's rights as a woman and a person protected under Title VII.

110. Defendants did not have a legitimate, non-discriminatory reason for eliminating GESSLING's position.

111. However, even if Defendants had a legitimate, non-discriminatory reason, GESSLING's sex was, at a minimum, a motivating factor in that decision.[2]

112. Plaintiff GESSLING is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII.

113. Plaintiff GESSLING, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under Title VII. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff GESSLING is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff HEATHER GESSLING requests that:

a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

---

[2] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT III:**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**
**(DISCRIMINATION BASED ON SEX as to GREEN)**

114. Plaintiff GREEN re-avers and re-states paragraphs 1–29; 60-70; 94-95 above, as though the same were fully re-written herein, and says:

115. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000-e for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

116. Plaintiff GREEN is a member of a protected class, to wit, female.

117. Plaintiff was, at all relevant times, qualified for her position of Director of Operations in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

118. Defendants acted with intentional disregard for Plaintiff GREEN's rights as a woman and a person protected under Title VII.

119. Defendants did not have a legitimate, non-discriminatory reason for eliminating GREEN's position.

120. However, even if Defendants had a legitimate, non-discriminatory reason, GREEN's sex was, at a minimum, a motivating factor in that decision.[3]

121. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII.

---

[3] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

122. Plaintiff GREEN, based on information and belief, alleges that Defendants' actions were done with malice, and with disregard for her protected rights under Title VII. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff GREEN is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff PENNY GREEN requests that:

a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT IV:**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**
**(DISCRIMINATION BASED ON SEX as to PAROTTO)**

123. Plaintiff PAROTTO re-avers and re-states paragraphs 1–29; 71-79; 94-95 above, as though the same were fully re-written herein, and says:

124. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000-e, for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was forced to resign on the basis of her sex, female.

125. Plaintiff PAROTTO is a member of a protected class, to wit, female.

126. Plaintiff PAROTTO was, at all relevant times, qualified for her position of Chief Marketing Officer in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

127. Defendants acted with intentional disregard for Plaintiff PAROTTO's rights as a woman and a person protected under Title VII.

128. Defendants did not have a legitimate, non-discriminatory reason for forcing PAROTTO to resign from her position.

129. However, even if Defendants had a legitimate, non-discriminatory reason, PAROTTO's sex was, at minimum, a motivating factor in that decision.[4]

130. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII.

131. Plaintiff PAROTTO, based on information and belief, alleges that Defendants' actions were done with malice, and with disregard for her protected rights under Title VII. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon

---

[4] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

Keumper, and/or other employees. Therefore, Plaintiff PAROTTO is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff TIFFANY PAROTTO requests that:

a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT V:**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**
**(DISCRIMINATION BASED ON SEX as to VANDEWATER)**

132. Plaintiff VANDEWATER re-avers and re-states paragraphs 1–29; 80-95 above, as though the same were fully re-written herein, and says:

133. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000-e, for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

134. Plaintiff VANDEWATER is a member of a protected class, to wit, female.

135. Plaintiff VANDEWATER was, at all relevant times, qualified for her position of Vice President of Pharmacy and subsequent position of Chief of Pharmacy in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

136. Defendants acted with intentional disregard for Plaintiff VANDEWATER's rights as a woman and a person protected under Title VII.

137. Defendants did not have a legitimate, non-discriminatory reason for eliminating VANDEWATER's position.

138. However, even if Defendants had a legitimate, non-discriminatory reason, VANDEWATER's sex was, at minimum, a motivating factor in that decision.[5]

139. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII.

140. Plaintiff VANDEWATER, based on information and belief, alleges that Defendants' actions were done with malice, and with disregard for her protected rights under Title VII. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff VANDEWATER is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff JENNIFER VANDEWATER requests that:

    a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and

---

[5] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

<strong><u>COUNT VI:</u><br><u>VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT</u><br><u>(DISCRIMINATION BASED ON SEX as to FOY)</u></strong>

141. Plaintiff FOY re-avers and re-states paragraphs 1–49; 94-95 above, as though the same were fully re-written herein, and says:

142. Plaintiff FOY brings this action under the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. §§ 760.01-760.11 for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

143. Plaintiff FOY is a member of a protected class, to wit, female.

144. Plaintiff was, at all relevant times, qualified for her position of Vice President of Operations and Brands and subsequent position of COO in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

145. Defendants acted with intentional disregard for Plaintiff FOY's rights as a woman and a person protected under the FCRA.

146. Defendants did not have a legitimate, non-discriminatory reason for eliminating FOY's position.

147. However, even if Defendants had a legitimate, non-discriminatory reason, FOY's sex was, at a minimum, a motivating factor in that decision.[6]

148. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA.

149. Plaintiff FOY, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Brandon Keumper, Peter Gillooly, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff ASHLEE FOY requests that:

    a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

    b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

    c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

---

[6] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

**COUNT VII:**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**(DISCRIMINATION BASED ON SEX as to GESSLING)**

150. Plaintiff GESSLING re-avers and re-states paragraphs 1–29; 50-59; 94-95 above, as though the same were fully re-written herein, and says:

151. Plaintiff brings this action under the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. §§ 760.01-760.11 for damages caused by Defendants' unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

152. Plaintiff GESSLING is a member of a protected class, to wit, female.

153. Plaintiff was, at all relevant times, qualified for her position of Chief Medical Officer of the Medical Board in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

154. Defendants acted with intentional disregard for Plaintiff's rights as a woman and a person protected under the FCRA.

155. Defendants did not have a legitimate, non-discriminatory reason for eliminating GESSLING's position.

156. However, even if Defendants had a legitimate, non-discriminatory reason, GESSLING's sex was, at a minimum, a motivating factor in that decision.[7]

157. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA.

---

[7] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

158. Plaintiff, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff HEATHER GESSLING requests that:

a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT VIII:
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## (DISCRIMINATION BASED ON SEX as to GREEN)

159. Plaintiff GREEN re-avers and re-states paragraphs 1–29; 60-70; 94-95 above, as though the same were fully re-written herein, and says:

160. Plaintiff brings this action under the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. §§ 760.01-760.11 for damages caused by Defendants' unlawful employment

practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

161. Plaintiff GREEN is a member of a protected class, to wit, female.

162. Plaintiff was, at all relevant times, qualified for her position of Director of Operations in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

163. Defendants acted with intentional disregard for Plaintiff's rights as a woman and a person protected under the FCRA.

164. Defendants did not have a legitimate, non-discriminatory reason for eliminating GREEN's position.

165. However, even if Defendants had a legitimate, non-discriminatory reason, GREEN's sex was, at a minimum, a motivating factor in that decision.[8]

166. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA.

167. Plaintiff, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff PENNY GREEN requests that:

---

[8] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT IX:
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## (DISCRIMINATION BASED ON SEX as to PAROTTO)

168. Plaintiff PAROTTO re-avers and re-states paragraphs 1–29; 71-79; 94-95 above, as though the same were fully re-written herein, and says:

169. Plaintiff brings this action under the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. §§ 760.01-760.11 for damages caused by Defendants' unlawful employment practices committed against Plaintiff because Plaintiff was forced to resign on the basis of her sex, female.

170. Plaintiff PAROTTO is a member of a protected class, to wit, female.

171. Plaintiff was, at all relevant times, qualified for her position of Chief Marketing Officer in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

172. Defendants acted with intentional disregard for Plaintiff's rights as a woman and a person protected under the FCRA.

173. Defendants did not have a legitimate, non-discriminatory reason for forcing PAROTTO to resign from her position.

174. However, even if Defendants had a legitimate, non-discriminatory reason, PAROTTO's sex was, at a minimum, a motivating factor in that decision.[9]

175. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA.

176. Plaintiff, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff TIFFANY PAROTTO requests that:

    a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

---

[9] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT X:**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**(DISCRIMINATION BASED ON SEX as to VANDEWATER)**

177. Plaintiff VANDEWATER re-avers and re-states paragraphs 1–29; 80-95 above, as though the same were fully re-written herein, and says:

178. Plaintiff brings this action under the Florida Civil Rights Act of 1992, ("FCRA"), Fla. Stat. §§ 760.01-760.11, for damages caused by Defendants' unlawful employment practices committed against Plaintiff because Plaintiff was terminated on the basis of her sex, female.

179. Plaintiff VANDEWATER is a member of a protected class, to wit, female.

180. Plaintiff VANDEWATER was, at all relevant times, qualified for her position of Vice President of Pharmacy and subsequent position of Chief of Pharmacy in that she had performed those essential functions since she was hired, and was not issued disciplinary action or otherwise advised that her performance was lacking in any way.

181. Defendants acted with intentional disregard for Plaintiff's rights as a woman and a person protected under the FCRA.

182. Defendants did not have a legitimate, non-discriminatory reason for eliminating VANDEWATER's position.

183. However, even if Defendants had a legitimate, non-discriminatory reason, VANDEWATER's sex was, at a minimum, a motivating factor in that decision.[10]

184. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA.

185. Plaintiff, based on information and belief, alleges that Defendants' actions were done with malice and with disregard for her protected rights under the FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendants in a sum according to proof at trial.

WHEREFORE, Plaintiff JENNIFER VANDEWATER requests that:

    a) The Court grant Plaintiff judgment award Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

    b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

    c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

---

[10] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

**COUNT XI:**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**
**(RETALIATION as to FOY)**

186. Plaintiff FOY re-avers and re-states paragraphs 1–49; 94-95 above, as though the same were fully re-written herein, and says:

187. Plaintiff FOY brings this action for retaliation in violation of Title VII.

188. After Plaintiff's termination, she filed a charge of discrimination with the EEOC against Defendants on November 13, 2023.

189. A few months after FOY filed her charge of discrimination, Defendants, in retaliation, filed a lawsuit against FOY on May 29, 2024.

190. Defendants' post-employment tactic of filing a retaliatory lawsuit against FOY served as a warning to dissuade other employees from filing a charge of discrimination.

191. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under Title VII of the Civil Rights Act of 1964.

192. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under Title VII of the Civil Rights Act of 1964. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff ASHLEE FOY requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and

retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff punitive damages upon a showing that Defendant's actions were malicious or reckless;

c) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

d) The Court award Plaintiff such other and further relief as the Court deems appropriate.

## COUNT XII:
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (RETALIATION as to GESSLING)

193. Plaintiff GESSLING re-avers and re-states paragraphs 1–29; 50-59; 94-95 above, as though the same were fully re-written herein, and says:

194. Plaintiff GESSLING brings this action for retaliation in violation of title VII.

195. After Plaintiff's termination, GESSLING, via her counsel, indicated to Defendants her intention to file a charge of discrimination with the EEOC against Defendants on September 11, 2023.

196. Only eight days after GESSLING made her intention known, Defendants, in retaliation, filed a lawsuit against GESSLING on September 18, 2023.

197. Defendants' post-employment tactic of filing a retaliatory lawsuit against GESSLING served as a warning to dissuade other employees from filing a charge of discrimination.

198. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under Title VII of the Civil Rights Act of 1964.

199. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under Title VII of the Civil Rights Act of 1964. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff HEATHER GESSLING requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff punitive damages upon a showing that Defendant's actions were malicious or reckless;

c) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

d) The Court award Plaintiff such other and further relief as the Court deems appropriate.

### COUNT XIII:
### VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
### (RETALIATION as to VANDEWATER)

200. Plaintiff VANDEWATER re-avers and re-states paragraphs 1–29; 80-95 above, as though the same were fully re-written herein, and says:

201. Plaintiff VANDEWATER brings this action for retaliation in violation of Title VII.

202. After Plaintiff's termination, she filed a charge of discrimination with the EEOC against Defendants on November 9, 2023.

203. A few months after VANDEWATER filed her charge of discrimination, Defendants, in retaliation, amended an existing lawsuit to include VANDEWATER as a Defendant on February 8, 2024.

204. Defendants' post-employment tactic of filing a retaliatory lawsuit against VANDEWATER served as a warning to dissuade other employees from filing a charge of discrimination.

205. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under Title VII of the Civil Rights Act of 1964.

206. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under Title VII of the Civil Rights Act of 1964. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff JENNIFER VANDEWATER requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, §706(g);

b) The Court award Plaintiff punitive damages upon a showing that Defendant's actions were malicious or reckless;

c) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

d) The Court award Plaintiff such other and further relief as the Court deems appropriate.

<u>**COUNT XIV:**</u>
<u>**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**</u>
<u>**(RETALIATION as to FOY)**</u>

207. Plaintiff FOY re-avers and re-states paragraphs 1–49; 94-95 above, as though the same were fully re-written herein, and says:

208. Plaintiff FOY this claim under the Florida Civil Rights Act, § 760.01, *et seq.*, Florida Statutes, for retaliatory action by Defendants.

209. After Plaintiff's termination, she filed a charge of discrimination with the EEOC against Defendants on November 13, 2023.

210. A few months after FOY filed her charge of discrimination, Defendants, in retaliation, filed a lawsuit against FOY on May 29, 2024.

211. Defendants' post-employment tactic of filing a retaliatory lawsuit against FOY served as a warning to dissuade other employees from filing a charge of discrimination.

212. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under the FCRA.

213. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under the FCRA. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster

Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff ASHLEE FOY requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

### COUNT XV:
### VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### (RETALIATION as to GESSLING)

214. Plaintiff GESSLING re-avers and re-states paragraphs 1–29; 50-59; 94-95 above, as though the same were fully re-written herein, and says:

215. Plaintiff GESSLING brings this claim under the Florida Civil Rights Act, § 760.01, *et seq.*, Florida Statutes, for retaliatory action by Defendants.

216. After Plaintiff's termination, GESSLING, via her counsel, indicated to Defendants her intention to file a charge of discrimination with the EEOC against Defendants on September 11, 2023.

217. Only eight days after GESSLING made her intention known, Defendants, in retaliation, filed a lawsuit against GESSLING on September 18, 2023.

218. Defendants' post-employment tactic of filing a retaliatory lawsuit against FOY served as a warning to dissuade other employees from filing a charge of discrimination.

219. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under the FCRA.

220. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under the FCRA. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff HEATHER GESSLING requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

### COUNT XVI:
### VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### (RETALIATION as to VANDEWATER)

221. Plaintiff VANDEWATER re-avers and re-states paragraphs 1–29; 80-95 above, as though the same were fully re-written herein, and says:

222. Plaintiff VANDEWATER this claim under the Florida Civil Rights Act, § 760.01, et seq., Florida Statutes, for retaliatory action by Defendants.

223. After Plaintiff VANDEWATER's termination, she filed a charge of discrimination with the EEOC against Defendants on November 9, 2023.

224. A few months after VANDEWATER filed her charge of discrimination, Defendants, in retaliation, amended an existing lawsuit to include VANDEWATER as a Defendant on February 8, 2024.

225. Defendants' post-employment tactic of filing a retaliatory lawsuit against VANDEWATER served as a warning to dissuade other employees from filing a charge of discrimination.

226. Defendants' retaliatory lawsuit constitutes an adverse post-employment action under the FCRA.

227. Defendants' actions were done with malice and with disregard for Plaintiff's protected rights under the FCRA. Defendants, by and through their officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of Foster Coulson, Peter Gillooly, Brandon Keumper, and/or other employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff JENNIFER VANDEWATER requests that:

a) The Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory and retaliatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b) The Court award Plaintiff the costs of this action together with her reasonable attorney's fees incurred herein, pursuant to contract and/or statute; and

c) The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT XVII:**
**FLORIDA PRIVATE WHISTLEBLOWER ACT**
**(PLAINTIFF FOY AGAINST DEFENDANTS)**

228. Plaintiff FOY re-alleges and re-avers paragraphs 1–49; 94-95 as fully set forth herein.

229. This is an action for damages under the Private Whistleblower Protection Act, pursuant to Florida Statutes §448.101 and §448.102, in taking retaliatory personnel action against Plaintiff FOY for objecting to and refusing to participate in the violation of Florida statutes and regulations.

230. During the course of her employment with Defendants, Peter Gillooly, the CEO of TWC, requested FOY to help him "fudge" the label of one of the company's products.

231. Specifically, Gillooly asked FOY to make a false "All Natural" claim on a children's chewable product, Kids Spike, to which FOY refused.

232. The clinical outcome assessment for the product also did not meet the label's claims, but there were little to no concerns on the Defendants' part to address the issue when it was brought to their attention.

233. FOY reasonably believes that Defendants' practice of using false labels violated FDUTPA, §§ 501.201-.213, and/or Fla. Stat. §499.0054, and/or Fla. Stat. §499.007, and/or Fla. Stat. §580.081.

234. Additionally, FOY was also required to work on products for other companies affiliated with TWC and IHB – Holistic Goddess and Zelenko Lab. Specifically, FOY

helped create formulas for these brands and oversaw their operations under the directive of Foster Coulson, Richard Ford, Brandon Kuemper, and Peter Gillooly.

235.   FOY discovered that Holistic Goddess's products were created in an unhygienic manner, where products were bottled in a warehouse without the use of gloves, hair nets, masks, or lab coats.

236.   When FOY raised the issue that the way these products were being bottled was because she reasonably believed that Defendants' practice violated the Food and Drug Administration's (FDA) regulations, and requested that these products be made with a manufacturer that would comply with the FDA.

237.   Despite being aware of the issue, Foster Coulson and Peter Gillooly rejected her request.

238.   FOY also discovered that a few of the Zelenko Lab's products were not manufactured under Kosher conditions, even though they were marketed as Kosher.

239.   FOY alerted Defendants of the Kosher label on its Zelenko Lab's products because she reasonably believed that such practice violated FDUTPA, §§ 501.201-.213, and/or Fla. Stat. §499.0054, and/or Fla. Stat. §499.007, and/or Fla. Stat. §580.081.

240.   However, even though Defendants acknowledged the issue, it was promptly brushed off, and nothing was done to rectify the problem.

241.   FOY further objected and refused to participate in Defendants' unscrupulous practice, and as a direct result, she was terminated.

242.   Under the Private Whistleblower Protection Act, FOY is protected from adverse employment action against her for objecting to and/or refusing to participate in Defendants' scheme to use false labels for their products, and for manufacturing their

products in an unsanitary manner. Such a scheme is a violation of FDUTPA, §§ 501.201-.213, and/or Fla. Stat. §499.0054, and/or Fla. Stat. §499.007, and/or Fla. Stat. §580.081, and/or the FDA regulations.

243. By reason of Defendants' effective wrongful discharge of FOY, FOY has been damaged in that she has suffered lost wages, benefits, and has suffered emotional distress.

244. Defendants' conduct in wrongfully discharging FOY was willful, wanton, and in reckless disregard of FOY's rights under Florida's Private Whistleblower Protection Act.

WHEREFORE, Plaintiff ASHLEE FOY requests judgment as follows:

a. Compensation to FOY for lost wages, benefits, and other remuneration pursuant to Fla. Stat. §448.103(2)(d);

b. Reinstatement to the same or an equivalent position at the rate of pay and with the full benefits before the retaliatory personnel action pursuant to Fla. Stat. §448.103(2)(b)-(c); or in lieu of reinstatement, front pay;

c. Assessment against TTG of reasonable costs and attorney's fees for this action pursuant to Fla. Stat. §448.104; and

d. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs ASHLEE FOY, HEATHER GESSLING, PENNY GREEN, TIFFANY PAROTTO, and JENNIFER VANDEWATER demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: October 24, 2025.

LAW OFFICES OF CHARLES EISS, P.L.
Attorneys for Plaintiff
550 South Andrews Avenue, Suite 600
Fort Lauderdale, Florida 33301
(954) 914-7890 (Office)
(855) 423-5298 (Facsimile)

By: /s/ Charles M. Eiss
CHARLES M. EISS, Esq.
Fla. Bar #612073
chuck@icelawfirm.com
NHU CAO, Esq.
Fla. Bar #1050344
nhu@icelawfirm.com